Karen BROOKS, Plaintiff,

v.

The GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,
Defendant.

No. Civ.A. 97–2026–GTV.

United States District Court,
D. Kansas.

Jan. 14, 1998.

Fred Spigarelli, Spigarelli, McLane & Short, Pittsburg, KS, for Karen Brooks, plaintiff.

John J. Jurcyk Jr., Paul K. Thoma, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for The Guardian Life Ins. Co. of America, defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this lawsuit alleging that defendant improperly terminated her partial disability benefits. Plaintiff originally filed the action in the District Court of Crawford County, Kansas but defendant removed the case to this court pursuant to 28 U.S.C. § 1441 on the grounds that plaintiff's suit implicates the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The case is now before the court on plaintiff's motion to remand (Doc. 34) the suit to state court. For the reasons set forth below, plaintiff's motion is denied.

### I. Factual Background

The defendant, Guardian Life Insurance Company of America (Guardian), created a Professional and Technical Services Industry Insurance Trust (Trust) in 1974 for the purpose of providing Guardian group policies to subscribers of the Trust. A myriad of unrelated employers subscribe to the Trust.

In September 1987, the plaintiff's employer—Quality Health Care, Inc. (Quality)—subscribed to the Trust, thereby obtaining medical coverage for its employees under a Guardian group policy. Quality also purchased a rider to the policy that provided for disability benefits for its employees. As is common under such arrangements, Quality served as a "participating employer" under the insurance program while the Trust served as the actual policyholder. Although the Trust, as policyholder, was technically responsible for the prompt payment of all premiums, each participating employer paid to the Trust the premiums due on behalf of its employees. Quality paid all required premiums due on behalf of its eligible employees.

At all relevant times, Quality maintained the program for its eligible employees and their dependents, each of whom was denominated either a "participant" or "beneficiary."

Quality issued an "individual certificate" to its employees describing the essential features of the insurance program, the benefits to which employees were entitled, and the procedures for receiving benefits. The plaintiff, whom Quality employed as an administrator or director of nursing from the time it purchased its facility until 1988, was eligible for coverage under the group insurance program and rider. In March 1988, plaintiff underwent surgery for a detached retina in her left eye. Plaintiff contends that she has been disabled since that date and is entitled to long-term disability benefits under the insurance program.

### II. Discussion

ERISA governs two types of employee benefit plans—pension benefit plans and welfare benefit plans. 29 U.S.C. § 1002. The case at bar focuses exclusively on the latter. An employee welfare benefit plan is defined as:

> any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment....

*Id.* § 1002(1). The Tenth Circuit has broken this definition down into five elements: (1) a "plan, fund, or program" (2) established or maintained (3) by an employer (4) for the purpose of providing health care or disability benefits (5) to participants or their beneficiaries. *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 464 (10th Cir.1997) (citing *Peckham v. Gem State Mut.*, 964 F.2d 1043, 1047 (10th Cir.1992)).

The first element is satisfied—establishing the existence of a plan, fund, or program—if, "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Id.* (citing *Peckham,* 964 F.2d at 1047). The insurance program at issue here clearly satisfies this test. The intended benefits include disability coverage, the class of beneficiaries encompasses Quality employees, the financing derives from

Quality's premium payments, and the procedures for receiving benefits are outlined in literature disseminated to Quality employees.

The second element—the established or maintained requirement—is designed to ensure that the insurance program is part of an employment relationship. *Id.* (citing *Peckham,* 964 F.2d at 1049). In determining whether the plan is part of an employment relationship, the court looks to the "degree of participation by the employer in the establishment or maintenance of the plan." *Id.* (citing *Peckham,* 964 F.2d at 1049). An employer's mere purchase of insurance for its employees does not, without more, constitute an ERISA plan. *Id.* The employer must have expressed an intent to provide benefits on a regular and long-term basis. *Id.* The purchase of a group policy or multiple policies covering a class of employees, however, offers substantial evidence that a plan has been established. *Id.*

In *Peckham,* which involved an insurance program virtually identical to the one in the instant action, the Tenth Circuit held that the employer, AAA, had satisfied the "established or maintained" test. The court noted:

> Given that AAA joined [the insurance trust created by Gem State Mutual of Utah for the purpose of providing Gem group policies to trust subscribers] in order to obtain insurance for its employees, purchased basic insurance from Gem for its employees, and listed insurance in its company manual as an employment benefit, AAA's plan was clearly part of its employment relationship with its employees. Thus, AAA's plan satisfies the "established or maintained" requirement.

*Peckham,* 964 F.2d at 1049. Similarly, in *Gaylor,* the Tenth Circuit remarked that an employer's purchase of disability insurance, acquired as part of an association of employers, "was not an isolated and aberrational incident, but was part of a comprehensive insurance program providing to [its] employees several different kinds of insurance." *Gaylor,* 112 F.3d at 464 (citation omitted). *See also Roe v. General Am. Life Ins. Co.,* 712 F.2d 450 (10th Cir.1983) (employer who

made life and long-term disability insurance available to its employees, and who contributed part of each employee's life insurance premium had an established ERISA "employee welfare benefit plan").

In her motion, plaintiff argues that this case falls beyond the parameters of ERISA because defendant failed to officially adopt the terms of the Trust agreement. Plaintiff also contends that defendant neglected to produce Guardian's approval of Quality's application. The court finds both arguments unpersuasive. First, defendant has produced Quality's Trust insurance application as well as Guardian's written approval thereof. Second, although the Trust allegedly states that "[a]n Eligible Employer may become a Participating Employer by filing, through the Trustees, with [Guardian's home office] an agreement executed by the employer adopting the terms of the Trust Agreement," [1] the Trust does not indicate that an applicant is precluded from becoming a Participating Employer based on its failure to file such a document. To the contrary, the Trust expressly states that once Guardian approves an employer's application, the employer is anointed with Participating Employer status. Third, even if the terms of the Trust did mandate such a filing, that is a matter between the insurance company and the applicant. If an insurer has approved an employer's application, the court will not strip that employer of its ERISA protections and obligations merely because it failed to adhere to all of the technical application requirements.

In the case at bar, the evidence demonstrates that Quality established or maintained an insurance program on behalf of its employees. Quality subscribed to the Trust created by Guardian in order to procure, *inter alia,* long-term disability coverage for Quality employees. Quality paid premiums on behalf of its eligible employees on a regular basis and erected a procedure by which all employees were informed of the availability and benefits associated with the program. Accordingly, the court finds that defendant

---

**1.** In her motion to remand, plaintiff does not include the document in which this language

allegedly appears.

**1174**

has satisfied the second prong of the ERISA governance test.

Plaintiff does not challenge defendant's ability to meet the third, fourth, or fifth elements of the ERISA test. The court agrees with defendant that the insurance program at issue here was purchased by an employer for the purpose of providing disability benefits to participants such as plaintiff. In sum, defendant has advanced ample evidence that the Trust to which plaintiff's employer subscribed, and under which plaintiff seeks benefits, is an employee welfare benefit plan governed by ERISA.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion to remand (Doc. 34) the case to the Crawford County, Kansas District Court is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**